IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

S.E. TECHNOLOGIES, INC.,

      Plaintiff/Counter-Defendant,

 vs.                                                  CIVIL NO.   00-1511 LH/LFG-ACE

SUMMIT ELECTRIC SUPPLY CO. INC.,

      Defendant/Counter-Claimant.

## MEMORANDUM OPINION AND ORDER
## ON SE TECHNOLOGIES' MOTION TO STRIKE AND/OR SUPPRESS

THIS MATTER is before the Court on SE Technologies, Inc.'s ("SE") Motion to Strike and/or Suppress Joseph J. Feigelman's and Brooks L. Hilliard's Material Changes to Deposition Testimony [Doc. 101]. Summit Electric Supply Co., Inc. ("Summit") filed its response in opposition on December 5, 2001 [Doc. 109], and the reply was filed December 21, 2001.

SE took the depositions of two of Summit's experts, Joseph J. Feigelman and Brooks L. Hilliard. The Feigelman deposition was taken on August 20, 2001, and Mr. Hilliard's was taken on September 1, 2001.[1] Subsequent to the completion of these depositions, both deponents submitted purported "corrections" to the depositions. It is these corrections that form the basis of SE's motion.

Rule 30(e) affords a deponent an opportunity to review and correct the transcript of a deposition. This Rule ensures that the transcript accurately reflects the testimony given during the

---

[1] Summit previously filed a motion for partial summary judgment on its breach of contract counterclaim against SE. In support of its motion, it relied on affidavits submitted by its experts, Joseph J. Feigelman and Brooks L. Hilliard. The parties agreed to allow for an extension of time within which to respond to Summit's motion until after depositions of its experts had been taken.

deposition. If there are errors, the deponent is authorized to submit a signed statement describing any changes within thirty days of submission by the officer. Fed. R. Civ. P. 30(e).

Some of the changes submitted by the deponents in this case fall within the category of appropriate technical changes meant to correct misspellings or the reporter's "mishearing." For example, on the correction sheet submitted by deponent Feigelman, "Wyley" was changed to "Wylie" (p. 9, line 22); "Dick" was changed to "Vic" (p. 123, line 20); "boutons" was changed to "bolt-ons" (p. 101, line 19). These kinds of corrections are entirely proper under Rule 30.

However, in addition to these technical changes, Mr. Feigelman sought to make substantive changes that would delete entire sections of his previous answers and substitute new ones. For example, on page 105 of his deposition, the following colloquy between Mr. Feigelman and examining counsel appears on the issue of whether the Baan IV Windows NT software purchased by Summit would or would not work for more than 100 concurrent users.

> ANSWER: Windows NT operating system by virtue of the way its licenses and the way--at that time, the way it would support users would only support 100 users.
>
> QUESTION: What does that mean? What are you saying?
>
> ANSWER: Take Baan out of the picture. Take the data base out of the picture. The server itself would only support 100 users. So even if we say Baan isn't in the picture and SQL server and Informix, NT alone in that time wouldn't support more than 100 users.
>
> QUESTION: NT would not?
>
> ANSWER: At that time.
>
> QUESTION: What time are you talking about?
>
> ANSWER: In '98.

> QUESTION: So, are you saying then Baan shouldn't have sold more than 100 licenses to anybody who was using an NT operating system?
>
> ANSWER: My understanding of NT is that you have to get into clustering, server clustering, to go more than 100 users.
>
> QUESTION: What was done in this case?
>
> ANSWER: The data base was split onto another server.
>
> QUESTION: At Summit?
>
> ANSWER: Correct. Correct.
>
> QUESTION: So, it would have gone more than 100 users the way it was split. Is that what you are saying?
>
> ANSWER: Correct.

Mr. Feigelman now wishes to modify his answer on line 25, which was originally "correct" to "correct, assuming the application software was not Baan."

Mr. Feigelman also wishes to submit other new responses as corrections. For example, beginning on page 181 of his deposition, the following colloquy appears.

> QUESTION: Do you know if Baan ever did any testing on the Baan IV software with the LoadRunner?
>
> ANSWER: I am not aware of that, no. Yes or no.
>
> QUESTION: Do you know whether the LoadRunner software was available to Summit so that they could have done this testing on their own if they wanted to?
>
> ANSWER: I would imagine it was, yes.
>
> QUESTION: Do you know whether that was ever done?
>
> ANSWER: No, I have no idea.

3

QUESTION: Do you know whether it could have been done?

ANSWER: I suppose it could have been done.

Thus, Mr. Feigelman testified that he was unaware of testing on the Baan IV software with LoadRunner. He imagined that LoadRunner software was available to Summit for testing, but did not know and, indeed, had no idea whether testing was done, but supposed that it could have been done.

In his proposed corrected response, Mr. Feigelman now wants the question and answer to read as follows:

QUESTION: Do you know if Baan ever did any testing on the Baan IV software with LoadRunner?

ANSWER: I don't believe it was available to be used on Baan IV, so I don't think so.

Similarly, Mr. Feigelman provided the following response to the question at page 182 of his deposition:

QUESTION: Do you know whether that was ever done?

ANSWER: No, I have no idea

He now wishes to delete his answer and state, "I doubt it."

Finally, Summit's other expert, Brooks L. Hilliard, submitted a correction page that included, in addition to appropriate typographical and spelling corrections, substantive changes to his prior testimony. For example, on page 190, he was asked:

QUESTION: If Summit's own support people had not experienced these problems and didn't know how to deal with them because this was a new product, how could SE be expected to know how to deal with bugs and things that came up involving the software?

> ANSWER: Well, SE being in the partnership relationship with Baan, had the knowledge of, or should have had the knowledge of Baan--and apparently did according to Mr. Fechenbach--at least have some knowledge or significant amount of knowledge of what the challenged were.

(p. 189, line 23-25; p. 190, line 1-8).

He now wishes to change his response to modify the sworn testimony to include the knowledge of others, specifically, Ives Perreault, SE's former expert witness. Similar changes appear on page 227, line 12, where Mr. Hilliard wishes to insert new responses to questions asked him at the deposition.

## Analysis

This is not the first time this issue has been considered by the Court. In <u>Migneault v. Peck</u>, CIV 96-385 (D.N.M. Jan. 24, 1997, the court dealt with a strikingly similar situation. There, the plaintiff was deposed and, subsequent to her deposition, sought to "correct" her deposition by submitting numerous technical and substantive changes. The technical corrections, reporter mistakes and misspellings were deemed appropriate under Rule 30, but substantive changes were not. The court rejected Migneault's attempt to change her sworn testimony. Relying on a more reasoned and rational approach to Rule 30, and on <u>Greenway v. International Paper Co.</u>, 144 F.R.D. 322 (W.D. La. 1992), the court rejected Migneault's attempts to "unspeak what was spoken."

In <u>Greenway</u>, subsequent to a deposition, the deponent submitted 64 corrections, making material changes to her testimony, including changing affirmative responses to negative responses, adding to, supplementing and explaining prior answers. The <u>Greenway</u> court rejected the deponent's attempts to alter sworn testimony, stating:

5

> The purpose of Rule 30(e) is obvious. Should the reporter make a substantive error, i.e., he reported "yes" but I said "no" or a formal error, i.e., he reported the name to be "Lawrence Smith" but the proper name is "Laurence Smith," then corrections by the deponent would be in order. The rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all, then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

Id. at 325.

This Court was persuaded by the Greenway court's analysis and concluded that Rule 30 should not be construed to permit a deponent to "alter what was said under oath." Rios v. Welch, 856 F. Supp. 1499, 1502 (D. Kan. 1994), *aff'd* 67 F.3d 1543 (10th Cir. 1995). The purpose of Rule 30 is to correct errors to ensure accuracy of the transcript; not to reflect on and thereafter craft more convenient responses to questions.

In Migneault, the court recognized that some courts do, indeed, authorize substantive changes to depositions. Still, the court remained convinced that "the better interpretation of Rule 30(e) is that changes be limited to corrections of the reporter's errors," Migneault at p. 4. In Rios v. Welch, 856 F. Supp. 1499, 1502 (D. Kan. 1994), *aff'd* 67 F.3d 1543 (10th Cir. 1995), the court stated that Rule 30 should not be used to permit a deponent to "alter what was said under oath." Following both Greenway and Rios, the court rejected Migneault's attempt to alter her deposition. The court stated:

> The foregoing examples suffice to demonstrate that what Migneault seeks to do is alter what was previously testified to under oath. That is contrary to the intent of discovery depositions. In Hall v. Clifton Precision, a Div. of Litton Systems, Inc., 150 F.R.D. 525, 528 (E.D. Pa. 1993), the court said:
>
>> The underlying purpose of a deposition is to find out what a witness saw, heard, or did--what the witness thinks. A deposition is meant to be a question-and-

> answer conversation between the deposing lawyer and the witness. There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers. The witness comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record.
>
> The attempt to now "mold a legally convenient record" to fit into Migneault's theory of the case is inappropriate. This process defeats the very purpose of a discovery deposition. Should Migneault wish to explain why her original sworn answer is wrong, she should do so at trial. The attempt to "unspeak" what was "spoken" is impermissible and will not be allowed. Rios v. Welch.

Migneault at p. 7.

So, too, here, the technical corrections submitted will be accepted, however, the substantive changes submitted by Feigelman and Hilliard are not in keeping with the intended purpose of Rule 30. They are not proper corrections, but are afterthoughts, and will not be accepted as corrections. Should the deponents wish to explain at trial why their statements were incorrect at the time made, or seek to explain why the answers were incomplete, they should be afforded an opportunity to explain. Fed. R. Evid. 613(b).

The Court grants SE's motion to strike the corrections. All other requested relief relating to suppression of testimony is denied.

_____
Lorenzo F. Garcia
United States Magistrate Judge