UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**SE TECHNOLOGIES, INC.,**

    Plaintiff/Counter-Defendant,

**v.**                                              CIV No. 00-1511 LH/LFG ACE

**SUMMIT ELECTRIC SUPPLY COMPANY, INC.,**

    Defendant/Counter-Claimant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the pending motions that address the breach of contract claim. Summit Electric Supply Company, Inc. ("Summit") filed a Motion for Partial Summary Judgment (Docket No. 24) on August 1, 2001.[1] Plaintiff SE Technologies, Inc. ("SE") filed, not only its response to this motion, but also a cross motion for summary judgment on the breach of contract claim (Docket No. 51). Summit then filed a motion to strike this cross motion for summary judgment (Docket No. 53).

For reasons that follow, Summit's Motion for Partial Summary Judgment (Docket No. 24)

---

[1] This pleading was filed as docket number 155 in the companion case, 00CV378.

1

is **denied**, as is SE's cross motion for summary judgment on the same breach of contract claim (Docket No. 51). Summit's Motion to Strike SE's Cross Motion for Summary Judgment on Breach of Contract Claim (Docket No. 53) is also **denied**.

**I.  Summit's Motion to Strike SE's Cross Motion for Summary Judgment**

As noted above, in its response to Summit's motion, SE included a cross motion for summary judgment. Summit objects to this motion on the ground that it is untimely, because it was not filed by the Court's August 3, 2001 substantive motion deadline. SE argues that, in this latest motion for summary judgment, Summit identified a new theory to support its breach of contract claim, wholly inconsistent with the theories previously asserted, and that it therefore became necessary for SE to move for summary judgment in its favor with respect to this new theory. SE contends that because this cross motion was wholly dependent upon the facts and arguments contained in Summit's motion, it should not be deemed untimely.

In its response/cross motion, SE requests that this Court conclude that no evidence supports Summit's claim of a 100-user limitation on the computer system in question, and that in fact, all of the evidence supports SE's contention that no such limitation existed. SE contends that the latter conclusion supports granting a cross motion in SE's favor.

Given the overlap of proof and argument contained in the motion and cross motion, without passing judgment on SE's characterization of its cross motion, the Court has considered the cross motion. The existence or lack of a user limitation must be evaluated by the Court, based on the motion of Summit, in any event. The Court will therefore consider the arguments of SE that, in fact, it is entitled to judgment, as well as those of Summit, to the same effect. Accordingly, Summit

Electric's Motion to Strike SE's Cross Motion for Summary Judgment on Breach of Contract Claim (Docket No. 53) is **denied**. No response from Summit to the cross motion will be necessary, given the Court's disposition of this issue as contained in this Memorandum Opinion and Order.

**II. Summit's Motion for Partial Summary Judgment**

**A. Applicable Standards**

An important function of summary judgment is to eliminate factually-unsupported claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In this instance, it is Summit, who is seeking summary judgment on its breach of contract counterclaim. As claimant, Summit must establish a right to summary judgment by showing that the pretrial record demonstrates that it is entitled to judgment as a matter of law, and that no reasonable factfinder at trial could fail to regard Summit as having discharged its preponderance of the evidence burden. *See generally, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-255 (1986).

In response, SE, the nonmovant, may not rest upon its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. FED.R.CIV.P. 56(e). This means that SE must produce evidence supporting its position. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 n.1 (10th Cir. 1998). The summary judgment material relied upon by the nonmovant is viewed in the light most favorable to it; however, that material must contain probative evidence that would allow a trier of fact to find in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-50.

Finally, this Court must bear in mind that determining credibility, weighing evidence and drawing inferences are jury functions, not those of a judge at summary judgment. *Id.* at 255.

**B. Discussion**

The primary focus of these motions is whether or not Summit has sufficiently established that there was a 100 user limitation on the software that Summit purchased.

These are the relevant background facts. Summit entered into an "Agreement for Consulting Services" ("the Agreement") with SE on March 28, 1997, to implement Baan IV software provided by Baan to Summit. Pursuant to this Agreement, SE promised to "provide programming and systems services." In its counterclaim (Docket No. 4), Summit alleged that: over the course of the project, it paid SE the sum of $2,294,330.60 for software implementation services and associated expenses; that 21 months after initiation of the implementation project, in December 1998, when it attempted to go "live" and actually utilize the Baan IV software, as implemented and customized by SE, the attempt was a complete failure; that SE was subsequently unable to correct the deficiencies in the implementation of Baan IV or otherwise render that software usable in Summit's business; that Summit accordingly elected to suspend implementation of the Baan IV software, and instead reverted to use of its prior computer software system; and, that absent any offer by SE to correct the deficiencies at no further cost to Summit, the Agreement with SE was terminated.

The parties have stipulated, in the Pretrial Order (Docket No. 48) to these three facts:

1. Summit paid SE the sum of $2, 294,330.60.
2. SE invoiced Summit for, but Summit declined to pay, an additional $279,772.23.
3. Summit did not provide written notice of termination of the Contract until June 4, 1999.

Summit's motion focuses on Count II of its counterclaim for breach of contract, primarily on the claim that SE failed to use reasonable skill or to perform its services in a good and workmanlike manner (Answ. and Countercl. at ¶ 17). Specifically, it is Summit's position that SE failed to

4

disclose "critical information" about the software SE was hired to implement, and that this was a breach of contract[2], entitling Summit to judgment on this issue. The "critical information" at issue in this motion is the capacity of the software, specifically whether or not the Baan IV software could accommodate 230 users, as intended by Summit. Summit argues that SE did not advise Summit that the NT version of the software that SE attempted to implement was limited to 100 concurrent users. Summit argues that, had it been so informed, it would not have selected that version of the Baan software nor would it have hired SE to implement that software. (Jury Affidavit at ¶¶3-4). Summit contends that good consulting practice and the custom and standard in the consulting business was for SE to disclose the 100 user limitation on the NT version of the Baan software to Summit.

SE counters with the argument that Summit has not factually established its basic premise, *i.e.*, that this software indeed had a 100 user limitation. SE argues that to prevail on this motion, Summit must establish this limitation, eliminating any genuine issues of material fact, and that having failed to do so, that SE is entitled to judgment on its cross-motion for summary judgment. Specifically, SE maintains that the system at issue, the Baan IV on NT using an Informix database, had no 100 user limitation and that Summit has no evidence to demonstrate that this system would not have met Summit's user requirements of 230 concurrent users.

The Court notes that SE does not dispute that it had a contractual duty to perform the contract with reasonable skill, in a workmanlike manner, in accordance with standard practices in the computer consulting industry. On page two of its brief, SE characterized Summit's claims as being for breach of an implied warranty to provide consulting services in a good and workmanlike manner

---

[2] In footnote 1 of its initial brief, Summit notes that it asserts other contractual breaches by SE as well, but states that they are not included in the immediate motion, because they arguably involve disputed facts.

and for breach of the implied warranty of good faith and fair dealing. SE also does not contest that it had a contractual duty to disclose to Summit its knowledge of any deficiencies in the software, but rather merely denies an evidentiary basis for these claims.

A factual dispute is not genuine unless it requires a trial to resolve competing reasonable factual contentions. A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The critical inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. Here, I conclude that there are competing reasonable factual contentions and sufficient disagreement to require submission to a jury.

The Court has carefully read all evidence before it. The topic of user limitations for the system in question is a complex issue, with many variables. The Court cannot weigh the evidence here and sift out the significance of these variables. The record before the Court indicates that the existence of a deficiency in the software, for the intended application, is a genuine issue of fact.

The complexity and disputed nature of the evidence before the Court is best illustrated by the testimony of key witnesses' testimony offered by both parties. For example, John Fechenbach, an SE employee, testified that he agreed with the statement that in March of 1997, the tested and accepted industry boundaries for the Windows NT platform with Baan IV had not yet exceeded 100 users. In late December 1998, Mr. Fechenbach wrote an e-mail to the SE final project manager, Thauvette, in which he expressed concerns about the viability of the system for the desired number of users. He testified about benchmark information he had seen for the Windows NT platform with Baan IV.

6

Later in his deposition, Fechenbach qualified some of these statements. He stated that he did not recall seeing benchmark testing results for sizing guides relating to Baan IV on NT with an Informix database. He testified that an actual application was "entirely situational", depending on the customer environment and on factors that varied from those in the laboratory. In the spring of 1998, he had no direct experience with the Baan NT product being implemented with an Informix database. Fechenbach's testimony at first seems to indicate a 100 user limitation, but then states that each actual application is "entire situational." It would not be appropriate at this juncture for the Court to resolve the inconsistencies in Fechenbach's own testimony on this issue.

The same can be said of the testimony of Summit's expert witness, Joe Feigelman. Although he initially testified that with "Baan, regardless of the database on NT, it's not advisable to go over 100 users", he then testified about clustering NT to get more than 100 users. (Feigelman Depo. at 105). Although his testimony was confusing, Feigelman then appeared to testify that the database could have been split onto another server at Summit, so it could have accommodated more than 100 users the way it was split. Summit contends that this statement about server clustering assumed software other than Baan IV, and so is irrelevant. This is yet another example of inherent inconsistencies contained in the testimony of a single witness, that cannot be sorted out or weighed by the Court at this juncture.

These are but two examples of the evidence before the Court that is largely and materially disputed. Based on this proof, Summit's motion shall be denied.

### III. SE's Cross Motion for Summary Judgment

In this motion, SE contends that no evidence supports Summit's claim of a 100-user

limitation, and that in fact, the evidence supports SE contention that no such limitation existed. As is apparent from the ruling on Summit's motion above, the Court is unable to come to any such conclusion, given the genuine issues of material fact. Accordingly SE's cross motion shall be denied.

**WHEREFORE**, for the reasons stated above, Summit's Motion for Partial Summary Judgment (Docket No. 24) is **denied**; SE's cross motion for summary judgment on the same breach of contract claim is **denied** (Docket No. 51); and, Summit's Motion to Strike SE's Cross Motion for Summary Judgment on Breach of Contract Claim (Docket No. 53) is **denied**.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**