UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**SE TECHNOLOGIES, INC.,**

    Plaintiff/Counter-Defendant,

**v.**                                                               CIV No. 00-1511 LH/LFG ACE

**SUMMIT ELECTRIC SUPPLY
COMPANY, INC.,**

    Defendant/Counter-Claimant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on SE Technologies, Inc.'s Motion for Summary Judgment on Summit Electric Supply Co., Inc.'s Breach of Contract Counterclaim (Docket No. 26). The Court, having considered the motion and briefs of the parties, as well as relevant case law, for the reasons that follow, concludes that the motion is not well taken and shall be **denied.**

## Legal Standards

The briefs of both parties are redundant, contain many immaterial facts, and overlap with other briefs already filed, in many respects. It has been unduly burdensome for the Court to sort out the arguments and the facts, disputed or otherwise. The parties are cautioned against any such poorly done submissions in the future to this Court.

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). On review, the party opposing summary judgment benefits from all reasonable doubts in determining whether a genuine material factual issue exists. *Id*. at 321-323.

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' . . . Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp*., 477 U.S. at 327. Rule 56 of the Federal Rules of Civil Procedure provides that it is the movant's burden to demonstrate the absence of a genuine issue of material fact. *Id*. at 321-323.

> [T]he burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case.

*Id*. at 325.

Upon such a showing,

> [the] adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but <u>the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial</u>. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED.R.CIV.P. 56(e)(emphasis supplied).

**Background**

In this motion, SE Technologies, Inc. ("SE") claims that it is entitled to summary judgment

on Summit Electric Supply Co., Inc's ("Summit") breach of contract counterclaim because Summit breached the contract first, thereby preventing SE from performing in accordance with the written agreement between the parties. Specifically, SE argues that Summit failed to give two weeks written notice to SE, as required under the Agreement, before unilaterally terminating the implementation project. In so doing, SE contends that Summit prevented SE from completing the work and/or addressing any alleged problems in SE's performance during the two week period provided for under the termination provision of the agreement. Alternatively, SE argues that there is no evidence that SE breached the contract, and that there is no evidence that any purported breach caused the implementation project to fail, resulting in damages to Summit.

The relevant portion of Summit's breach of contract counterclaim (Count II) states: "SE failed to use reasonable skill or to perform its services in a good and workmanlike manner, thereby breaching the Agreement with Summit and causing damage to Summit."

These facts appear to be undisputed: The "Agreement for Consulting Services" ("Agreement") is attached to the Complaint for Breach of Contract as Exhibit A. On March 28, 1997, Summit and SE entered into this Agreement, whereby SE agreed to "provide programming and system services." The "Scope of Work" of the Agreement refers to Paragraph B of Attachment A, which is only a list of project team members. The parties agree however that the purpose of this Agreement was for SE to implement the Baan IV on NT software ("the software") for Summit.

SE's term of service under the Agreement began on April 1, 1997. It was to continue through completion of the implementation project unless terminated by either party in accordance with Paragraph 7 of the Agreement, the termination clause. Paragraph 7 states: "Termination – This Agreement may be terminated by [Summit] by giving two weeks written notice to [SE]. [SE] shall

3

be entitled to payment for charges up to the time of termination." Also relevant is Paragraph 15 of the Agreement, which states "Sole Agreement – This Agreement shall supersede all prior agreements and understandings between the parties respecting the subject matter hereof. This Agreement may not be changed or terminated orally or on behalf of either party."

Summit decided to "go-live" with the software system on December 7, 1998. Prior to this time, SE provided to Summit no written notice to terminate. On June 4, 1999, Summit sent a letter to SE providing two weeks written notice that it intended to exercise its right to terminate the Agreement.

**Discussion**

SE asserts the following are undisputed statements of material facts ("SMF") that support its argument that Summit initially, materially breached the Agreement, thereby preventing SE from performing the Agreement. During the course of the implementation project, Summit experienced performance problems with the software, including spontaneous system log-offs ("poofing"), and slow system response (SMF 7). During the "go-live" week, Summit experienced these same problems (SMF 9). On approximately December 13, 1998, without consulting SE, Summit decided to "abandon" the go-live attempt on the software system and reverted to using its prior system (SMF 10). The next day, SE employees were verbally advised by Summit that Summit had decided to abandon the go-live attempt, and that there was no reason for SE personnel to remain on site and continue to provide services (SMF 11). Although SE wanted to continue the go-live attempt and implementation project, it was precluded from doing so by Summit's decision to abandon the attempt (SMF 13).

Summit asserts its own statements of material fact in response to SE's motion. During the course of implementation, Summit discovered hundreds of defects in the software, as well as the fact that numerous essential components were non-functional or missing entirely (SMF 15). When the "go-live" attempt was made in December 1998, Summit was unable to conduct its business using the software, primarily due to disconnect and system speed problems (SMF 16). SE personnel did not have the qualifications or expertise necessary to solve these two types of problems that Summit encountered before and during the go-live attempt (SMF 21). Despite encouragement from SE to continue the go-live attempt, Summit suspended it in December 1998, and then spent several months attempting to evaluate what went wrong and how it should proceed (SMF 24). Summit asked two of SE's on-site consultants to contribute to the reevaluation, but they declined to do so (SMF 19). SE never offered to correct any deficiencies in its services or the implementation at no charge to Summit (SMF 23). Eventually, Summit elected to stay with its existing computer system instead of proceeding with alternatives that had been presented to Summit by Baan (SMF 24). With no further need for SE's services, Summit then formally terminated the contract with SE (SMF 24).

It is true that, if one party commits a material breach of the contract that remains uncured, the other party is not required to perform its remaining obligations under the contract. *See Familglietta v. Ivie-Miller Enterprises, Inc.*, 126 N.M. 69, 74 (Ct. App. 1998). What first must be examined are the facts as to whether or not Summit initially materially breached the Agreement, and secondly, whether Summit interfered or impeded SE's performance of the Agreement.

Here, SE contends that Summit's failure to give written termination as required by the Agreement is a material breach. SE's factual proof on this issue is contained in part in its SMF 10 and 11, which state that Summit "abandoned" the go-live attempt, making the decision to do so

5

without consulting SE, verbally advising SE employees of this decision and that there was no reason for them to remain at the go-live sites to continue providing services. SE's SMF 12 states that prior to or at the time that Summit advised SE of its decision to abandon the go-live attempt, Summit provided SE with neither written notice of termination nor with two weeks notice, as required by Paragraph 7 of the Agreement.

While not in the manner prescribed by local rule[1], Summit does manage to specifically controvert what SE characterizes as this material breach. Thus, under local rule 56, the Court is unable to deem SE's factual contentions to be admitted. Summit contends that it did not, at this point, "terminate" the Agreement. Summit characterizes its behavior as a "suspension", rather than "abandonment" of the go-live attempt.[2] Summit asserts that during this time, it reevaluated its options and eventually elected to stay with its existing computer system, at which time it formally

---

[1] Local Rule 56 provides that a party opposing summary judgment must set forth a concise statement of material facts, with each fact in dispute numbered, referring with particularity to those portions of the record upon which the party relies, stating the number of the Movant's fact that is disputed. "All material facts set forth in the statement of the Movant will be deemed admitted unless specifically controverted." D.N.M.LR-CIV. 56.1(b). Summit has not directly refuted each of what SE contends are undisputed facts, in the manner prescribed by the rule. Rather Summit disputed two paragraphs directly and the materiality of 11 paragraphs. It then proceeded to set forth 25 paragraphs of facts that *indirectly* dispute the accuracy of SE's factual contentions.
     The summary judgment material relied upon by the nonmovant is viewed in the light most favorable to it; however, that material must contain probative evidence that would allow a trier of fact to find in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Despite the improper format under this Court's local rule, Summit has asserted such probative evidence, as explained in the main text of this Memorandum Opinion and Order.

[2] Once again, Summit's factual proof on this issue is indirect. In its argument that it merely suspended the go-live attempt, Summit tendered proof that would show that SE was unable to perform the Agreement. It submitted deposition testimony of Sylvain Thauvette, to the effect that SE did not have, during the go-live attempt, the proper people to specifically address the two big problems of slowness and disconnects, (Thauvette Depo. at 128-129), with the implication that SE was incapable of performing the Agreement. Mr. Thauvette later testified he had no reason to believe, if work on the implementation had continued during the week of December 14, that SE would have been able to solve the slow performance or disconnect problems. (*Id*. at 131). He also testified that he doubted whether SE technical people could have fixed these two problems if they had remained at Summit indefinitely (*Id*. at 132).

6

terminated the contract. (Summit's SMF 22 and 24).

The Court is unable, given this factual dispute and the scanty language of the Agreement and its lack of definitions as to what constitutes "termination", to factually determine that the Agreement was terminated in December of 1998, as opposed to June of 1999. I am unable to conclude, as a matter of law, that the Agreement was terminated at the time that Summit decided not to proceed with the go-live attempt in December of 1998. Therefore, I am unable to conclude that, as a matter of law, Summit's conduct constituted a breach of contract.

Next I will consider whether or not Summit in any way prevented SE's performance of the Agreement. In its SMF 11, SE contends that, when SE employees attempted to continue the go-live effort on December 14, 1998, Summit told them that Summit had decided to abandon this attempt and that there was no more reason for them to remain on the sites providing services.

Summit disputes the contention that it prevented SE's performance, with facts to the effect that SE did not have the qualifications or expertise necessary to solve the problems in the system (Summit's SMF 21), *i.e.*, to perform the Agreement in any event. Testimony of Mr. Thauvette, cited in support of Summit's SMF 21, is partially discussed above, and is obviously relevant to the question of whether SE breached the Agreement. This factual dispute prevents the Court from granting summary judgment on this issue as well.

The Court is unable at this juncture to conclude, as a matter of law, that Summit materially breached the Agreement in December 1998, or that it prevented SE's performance of the Agreement. Furthermore, whether or not SE breached the Agreement and whether or not this breach caused the implementation project to fail, resulting in the damages allegedly suffered by Summit, remain disputed issues of fact that must be resolved by a jury.

7

**WHEREFORE**, for the above stated reasons, SE Technologies, Inc.'s Motion for Summary Judgment on Summit Electric Supply Co., Inc.'s Breach of Contract Counterclaim (Docket No. 26) shall be **denied**.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**