# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**SE TECHNOLOGIES, INC.,**

    Plaintiff/Counter-Defendant,

**v.**                                                       CIV No. 00-1511 LH/LFG ACE

**SUMMIT ELECTRIC SUPPLY
COMPANY, INC.,**

    Defendant/Counter-Claimant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on two motions that were filed by SE Technologies, Inc. ("SE"). Both of these motions focus on Counts I and III of the counterclaim of Summit Electric Supply Company, Inc. ("Summit"). The first of these is SE Technologies, Inc.'s Rule 9(b) Motion to Dismiss Misrepresentation Claims Raised by Summit Electric Supply Co., Inc. in Counts I and III of its Counterclaim (Docket No. 28). The Court, having considered the briefs and relevant case law, for the reasons that follow, concludes that this motion shall be **denied**. The second motion is SE Technologies, Inc.'s Motion to Dismiss or for Judgment on the Pleadings on Summit Electric Supply Co., Inc.'s Claims for Misrepresentation and Violations of New Mexico's Unfair Practices Act (Docket No. 29). The Court, having considered the briefs and relevant case law, for the reasons that follow, concludes that this motion shall be **denied**.

**I. SE's Rule 9(b) Motion**

SE contends that Counts I and III of Summit's counterclaim must be dismissed because, as misrepresentation claims, they have not been plead with sufficient specificity.

Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." FED.R.CIV.P. 9(b). Rule 9 must be read in conjunction with the principles of Rule 8, which calls for pleadings to be "simple, concise, and direct, . . . and to be construed as to do substantial justice." FED.R.CIV.P. 8(e) and (f). *See Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997). The purpose of Rule 9(b) is to "afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based . . . . " *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992)(*quotation omitted*).

Generally a party that opposes a pleading under Rule 9(b) asserts a Rule 12(e) motion for a more definite statement, a Rule 12(f) motion to strike, or a Rule 12(b) motion to dismiss. SE entitles its motion as one to dismiss, yet proceeds to attempt to rely on factual matters outside the pleadings. The purpose of a Rule 9(b) motion is to determine the sufficiency of the allegations, which is determined from the pleadings themselves, not from the contents of any motions, their attachments, or other extraneous matters. In light of this purpose, the Court will not treat this motion as one for summary judgment, but rather, will exclude matters outside the pleading, for this analysis. *See* FED.R.CIV.P. 12(b). The Court notes that SE never filed a motion for summary judgment with respect to these two counterclaims.

Count I is brought under the New Mexico Unfair Practices Act, NMSA 1978, § 57-12-3, *et*

2

*seq.* ("UPA"). It alleges that SE made knowingly false or misleading statements in connection with its expertise and experience in the implementation of the Baan IV software purchased by Summit, in connection with the suitability of that software for use in Summit's business, and in connection with SE's ability to successfully implement that software. Summit alleged further that SE's statements misled or deceived Summit into contracting with SE, paying for Baan IV, and permitting SE to engage in the implementation process for 21 months.

Count III of Summit's counterclaim is for misrepresentations, knowingly and negligently made.

Both Counts I and III incorporate by reference the allegations of three prior paragraphs in the counterclaim. Specifically, these counts refer to paragraph 6 of the counterclaim, which mentions specific representations that SE made, both prior and subsequent to Summit's execution of the Agreement[1]. By reference to Paragraph 7, Summit alleges representations made during the implementation process.[2] Finally, by reference to Paragraph 8, Summit alleges representations, made by SE at an unspecified time, to the effect that customization of the software was necessary to make Baan IV capable of meeting Summit's requirements.

The sufficiency of these counterclaims must be judged in their entirety. A fair reading of them indicates that by cross-referencing as allowed by Rule 10(c), they sufficiently particularize the circumstances constituting misrepresentations, to comply with Rule 9(b). The time frame of these

---

[1] These are representations that SE's methodology for implementation of Baan IV software had been proven successful; that it would make available employees with the expertise and experience necessary to implement Baan IV successfully; that SE was an implementation "partner" of Baan's, and that it permitted Baan to represent that SE was such a "partner, suggesting that these two entities had a business relationship that would be of particular advantage to Summit in the implementation of Baan IV.

[2] This includes assurances from SE to Summit that Baan IV was appropriate for Summit's business and that the software could and would be successfully implemented.

3

alleged misrepresentations is provided in Paragraphs 5, 6, 7 and 8 of the counterclaim. The content of these alleged misrepresentations, as set forth above, is not composed of conclusory allegations of fraud or misrepresentation. Summit has specified four or five of the alleged misrepresentations, and the identity of the party making the statements, *i.e.*, S.E.. The consequences of these alleged misrepresentations are mentioned as well: that the statements by SE misled or deceived Summit into contracting with SE, paying for Baan IV, and permitting SE to engage in the implementation process for 21 months and that as a further result, Summit suffered an actual loss of at least $5.2 million (Countercl., ¶¶ 13, 14). The place of the alleged misrepresentations is not mentioned, however I conclude that this is not a serious omission. Based on the allegations that are contained in the counterclaims, I conclude that Counts I and III gave SE sufficient notice of the charges against it to satisfy Rule 9(b). *See Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1237 (10th Cir. 2000). Accordingly, SE Technologies, Inc.'s Rule 9(b) Motion to Dismiss Misrepresentation Claims Raised by Summit Electric Supply Co., Inc. in Counts I and III of its Counterclaim (Docket No. 28) is **denied.**

## II. Motion to Dismiss Claims for Misrepresentation and Violations of the UPA

I will next consider SE Technologies, Inc.'s Motion to Dismiss or for Judgment on the Pleadings on Summit Electric Supply Co., Inc.'s Claims for Misrepresentation and Violations of New Mexico's Unfair Practices Act (Docket No. 29)

Generally, motions to dismiss for failure to state a claim are viewed with disfavor and are therefore rarely granted. 5A CHARLES ALAN WIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (1990). In ruling on a motion to dismiss, the Court must construe the complaint

in the light most favorable to the plaintiff and take the allegations asserted in the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A court should not grant a motion to dismiss for failure to state a claim unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Therefore, "the issue is not whether a plaintiff will ultimately prevail but whether claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. at 236.

In addressing this motion to dismiss, the Court is required to accept as true all well-pleaded facts alleged in the counterclaim. *See Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1266 (10th Cir. 1989). The Court does not, however, accept conclusory allegations as true, although a party's intent may be alleged generally. *Id.* at 1269-70; *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1359 (10th Cir. 1989). This Court will dismiss the counterclaim, or claims contained therein, only if it appears that Summit can prove no set of facts in support of its claims that would entitle it to relief. *Phelps v. Wichita Eagle-Beacon*, 886 F.2d at 1266. *See also, Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). The Court will consider Summit's arguments in light of these standards.

**A. Scope of SE's Motion**

SE seeks dismissal of Counts I and III of Summit's counterclaim. As indicated above, Counts I and III indicate that they arise from conduct that occurred *prior and subsequent to execution of the Agreement* and *prior to and during* the implementation project. As grounds for dismissal, SE states that these tort claims sound in contract, are redundant in nature, and are barred by the economic loss rule. In its Reply Brief, SE clarifies that it is moving to dismiss Summit's tort claims, only "*to the extent they were pleaded as being based on conduct occurring during the implementation project*

5

*and SE's performance of contractual services.*" (Reply Brief at p. 3).[3] For this reason, the Court considers SE's motion to be directed at dismissal for only those claims for conduct that occurred *during* the implementation project. In this same vein, I note that at page 8 of the Reply Brief, SE indicates that it is not asking the Court to dismiss claims for fraudulent inducement.

Based on the specific language of Counts I and III that limits these claims to conduct that occurred *prior to and during* the implementation project, I conclude that any conduct *after* the implementation project is not included in the scope of these two counts.

### B. The Economic Loss Doctrine

The economic loss doctrine is a damage limitation that arises out of the contractual negotiated relationship of the parties, negating the need for the risk-spreading rationale that is the foundation for tort damages. SE argues that, in commercial transactions, purely economic losses may only be recovered under contract, not tort, theories. Summit counters with the arguments that this doctrine is applicable only to contracts for the sale of goods, and that it does not apply to either intentional or negligent misrepresentation claims. Summit represents that no New Mexico court has been faced with these specific issues. SE, in its Reply Brief, does not dispute this representation, and urges this Court to look to the law of other jurisdictions.

In facing the task of predicting whether New Mexico courts would apply the economic loss doctrine to this case, this Court should look to "all resources available, including decisions of New Mexico courts, other state courts and federal courts, in addition to the general weight and trend of

---

[3] On Page 6 of the Reply brief, SE states: "SE does not contend that the economic loss doctrine bars Summit's fraudulent and negligent misrepresentation claims that are based on *pre*-contractual representations and conduct. SE did not move to dismiss those pre-contractual claims on the ground that they are barred by the economic loss doctrine — it moved to dismiss Summit's misrepresentation and UPA claims to the extent they were pleaded as being based on SE's performance under the contract."

6

authority." *FDIC v. Schuchmann*, 235 F.3d 1217. 1225 (10th Cir. 2000).

The economic loss doctrine was adopted by the New Mexico Court of Appeals in *Utah Intern., Inc. v. Caterpillar Tractor Co.,* 108 N.M. 539 (Ct.App. 1989)(*cert. denied).* The Court held that "in commercial transactions, when there is no great disparity in bargaining power of the parties, economic losses from *injury of a product to itself* are not recoverable in tort actions; damages for such economic losses in commercial settings in New Mexico may only be recovered in contract actions." *Id*. at 542. (*emphasis added; citation omitted*). The Court adopted the rule "in order to allow commercial parties to freely contract and allocate the risk of defective products as they wish." *Id.*

I conclude that it is unnecessary to address the question of whether this doctrine applies to actions involving service contracts. Instead, I focus on the issue of whether New Mexico courts would apply the economic loss doctrine to actions involving misrepresentation claims, under the *Schuchmann* approach mentioned above.

Summit cites the Court to three New Mexico cases[4], wherein claims for negligent misrepresentation have been available to contracting parties. These cases, while not dispositive in themselves, provide some insight into how New Mexico courts view these types of scenarios. Furthermore, according to a law review article on this topic, "[V]irtually every jurisdiction that has considered this issue has determined that the Economic Loss Doctrine does not bar fraud and

---

[4] These cases are: *Ruiz v. Garcia*, 115 N.M. 269, 275 (1993)(setting out the elements of a negligent misrepresentation claim and noting that if the defendant "breached a duty of disclosure that it owed to [the plaintiff] independent of the . . . contract, it might be liable for her for negligent misrepresentation."); *Gilmore v. Duderstadt*, 125 N.M. 330 (Ct. App. 1998)(finding substantial evidence to support claims for negligent misrepresentation during contract negotiations and breach of contract); *Stotlar v. Hester*, 92 N.M. 26 (Ct.App. 1978)(holding that plaintiff had made sufficient factual showing to survive summary judgment on both negligent misrepresentation and breach of contract claims.

7

misrepresentation." Steven C. Tourek, et al., *Bucking the "Trend": The Uniform Commercial Code, the Economic Loss Doctrine, and Common Law Causes of Action for Fraud and Misrepresentation*, 84 IOWA L. REV. 875, 892 n.85 (1999)(*collecting cases*).

As noted in this law review article, the Court in *Stoughton Trailers, Inc. v. Henkel Corp.*, 965 F.Supp. 1227 (W.D. Wis. 1997) provides an excellent explanation of the reason for this widely followed approach. In this case, the Court rejected the proposition that any intentional tort claims, such as fraudulent misrepresentation, could be barred by the economic loss doctrine:

> Although it makes sense to allow parties to allocate the risk of mistakes or accidents that lead to economic losses, it does not make sense to extend the doctrine to intentional acts taken by one party to subvert the purposes of a contract. Although theoretically parties could include contractual provisions discussing the allocation of responsibility when one party intentionally lies or misleads another, it would not be conducive to amicable commercial relations to require parties to include such clauses in contracts. Expressing such a basic lack of trust in the other party would be likely to sour a deal from the start.
>
> A party to a contract cannot rationally calculate the possibility that the other party will deliberately misrepresent terms critical to that contract. Public policy is better served by leaving the possibility of an intentional tort suit hanging over the head of a party considering outright fraud.

*Id.* at 1236.

Even if the economic loss doctrine were to be applied by New Mexico to services contracts, I am persuaded that the rationale of the doctrine is inapplicable to these fraud and negligent misrepresentation claims. These claims arise out of stated misrepresentations, rather than from the defective performance of a product. Summit's remedies for this claim accordingly derive from the law of torts rather than from the law of contracts. It would be inapposite to apply the economic loss doctrine for this reason. It is logical that the economic loss rule may preclude recovery in tort only

8

when the duty breached is a contractual duty. The purpose of the economic loss doctrine is to limit damages to those within the contemplation of the contracting parties. Fraud and misrepresentation are not foreseeable, nor are their attendant damages, at the time that parties enter into a contract. The rationale stated above for the economic loss doctrine is simply inapplicable. The breaching party in such a situation is also a tortfeasor. It would be unfair for it to utilize the law of contract to shield itself from liability in tort for its deliberate or negligent misrepresentations. *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1226-27 (10th Cir. 2000).

In light of the New Mexico case law cited above, and what appears to be the general weight and trend of authority, I conclude that the economic loss doctrine does not bar Count III of Summit's counterclaim, which is for misrepresentations, knowingly and negligently made.

### C. UPA Claim

Count I of Summit's counterclaim is brought under the New Mexico Unfair Practices Act, N.M. STAT. ANN. § 57-12-3 (1978)(2000 Repl. Pamp.)("UPA"). The allegations of this count are summarized herein at page 3. As stated above, the relevant time frame for these allegations is contained in Paragraphs 6 and 7 of the counterclaim. These alleged periods of time are prior and subsequent to Summit's execution of the Agreement and during the implementation process.

Under the UPA, an "unfair or deceptive trade practice" is defined in pertinent part as any false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services. *See* § 57-12-2(D). SE contends that Summit's allegations do not state a claim to the extent that they allege conduct that did not occur in connection with the sale of services. More specifically, SE seeks dismissal of any allegations relating to conduct that occurred *subsequent* to the execution of the

9

Agreement and *after* the sale of services to Summit, on the rationale that such conduct cannot be considered to be in connection with the sale of services. SE further argues than any conduct that occurred *during* performance of the implementation contract took place after the sale of services.

Consistent with SE's arguments, I agree that it would be improper to equate an ordinary breach of contract with an unfair trade practice. New Mexico law requires however that, to fall under the UPA, a knowing misrepresentation must be made in connection with the breach of contract. *Diversey Corporation v. Chem-Source Corporation*, 125 N.M. 748, 754 (Ct.App. 1998). In the *Diversey* case, the Court held that to establish a claim under the UPA, the claimants had to prove that Diversey knowingly made misrepresentations. The Court held that one possible way to show such a misrepresentation was to establish that Diversey failed to deliver the contracted for quantity of goods and services. The Court held that, if contained in a jury instruction, that this would adequately express the requirements of the law.

New Mexico law under the UPA is very limited. I have been unable to find any New Mexico law that defines "in connection with" as narrowly as SE urges. The *Diversey* case leads me to conclude however, that a misrepresentation, coupled with a failure to deliver services, could amount to a violation under the UPA. I interpret this case to mean that the narrow time frame advocated by SE would be contrary to New Mexico law. In other words, conduct alleged subsequent to execution of the Agreement and after the sale of services, and even during performance of the implementation period, could be within the term "in connection with" the sale of services. These could all be analogized to a "failure to deliver services."

Summit, in essence, alleges that SE made misrepresentations, coupled with its failure to implement the system, as promised. I conclude that these allegations sufficiently state a claim under

*Diversey.*

More specifically, I conclude that Summit's allegations state a claim under the UPA, for alleged misrepresentations both prior and subsequent to Summit's execution of the Agreement as well as during the implementation process.

SE's second argument under the UPA is that Summit's alleged misrepresentations amount to nothing more than "puffing" or future actions that might or might not occur. This is an inappropriate argument for a motion to dismiss, because it necessarily requires evidentiary matters outside the pleadings. For this reason, I conclude that it has no merit.

**WHEREFORE**, for the above-stated reasons, I conclude that SE Technologies, Inc.'s Rule 9(b) Motion to Dismiss Misrepresentation Claims Raised by Summit Electric Supply Co., Inc. in Counts I and III of its Counterclaim (Docket No. 28) and SE Technologies, Inc.'s Motion to Dismiss or for Judgment on the Pleadings on Summit Electric Supply Co., Inc.'s Claims for Misrepresentation and Violations of New Mexico's Unfair Practices Act (Docket No. 29) are **denied.**

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT COURT**