UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**SE TECHNOLOGIES, INC.,**

    Plaintiff/Counter-Defendant,

v.                                        CIV No. 00-1511 LH/LFG ACE

**SUMMIT ELECTRIC SUPPLY
COMPANY, INC.,**

    Defendant/Counter-Claimant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Summit Electric's Motion and Supporting Brief to Alter or Amend the Judgment to Award Prejudgment Interest (Docket No. 165). The Court, having considered, the motion, the memoranda of the parties, and the applicable law, and being fully advised, concludes that the motion is **denied**.

This case came before the Court for a jury trial on March 18-27, 2002. The jury returned a verdict in favor of Summit Electric Supply Company, Inc. (hereafter "Summit"), in part finding that SE Technologies, Inc. (hereafter "SE") breached its contract with Summit and committed unfair trade practices causing damages to Summit in the amount of $3 million dollars. As noted by both parties in their briefs, the amount awarded to Summit appears to be directly related to the amounts that Summit paid to SE for its work to implement the Baan software.

1

Because Summit prevailed on state law claims, state law controls as to whether prejudgment interest should be awarded on the judgment. *Atlantic Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1156 (10th Cir. 2000). Summit seeks prejudgment interest under two different New Mexico statutes, N.M.STAT. ANN.§§ 56-8-3 and 56-8-4(B)(Michie 1996 Repl.).

## I. Analysis under § 56-8-4(B)

Under this statute, the Court may, in its discretion, award prejudgment interest at a rate up to 10% from the date the complaint was served to the date of the judgment. This statute applies to all actions and is not limited to those based on contract or in which damages are ascertainable before trial. *Sunwest Bank v. Colucci*, 872 P.2d 346, 351 (N.M. 1994). According to the express language of this statute, in exercising its discretion under this section, the Court should consider, among other things: (1) whether or not Summit was the cause of unreasonable delay in the adjudication of the claims; and, (2) whether or not SE had previously made a reasonable and timely offer of settlement to the plaintiff. In determining whether to award fees under this statute, the Court must take into account "all equitable considerations" that further the statute's goals of fostering settlement and preventing delay. *Gonzales v. Surgidev Corp.*, 120 N.M. 133, 150 (1995). Under this section, this Court need not make specific factual findings, but the Court's reasons should be ascertainable from the record and not contrary to logic and reason. *Id.* The obvious purpose of this section is "to foster settlement and prevent delay." *Lucero v. Aladdin Beauty Colleges, Inc.*, 117 N.M. 269, 272 (1994).

Counsel for each party has submitted an affidavit relating to these two factors. Each attorney states in his affidavit that at no time did his client seek a continuance of any trial setting or in any other way delay the adjudication of the parties' claims. Although SE argues that Summit's settlement

demands were unreasonable, SE makes no direct argument that Summit was the cause of unreasonable delay in the adjudication of the matter. This first prong of the analysis is not really at issue.

What is extensively briefed and discussed in the affidavits is whether or not SE previously made a reasonable and timely offer of settlement to Summit.

The statute provides that the Court may allow interest from the date the complaint is served upon the defendant. Summit originally sued Baan only in state court. That matter was removed to this Court on March 15, 2000. SE sued Summit in this Court in a separate lawsuit.[1] That Complaint was filed on October 26, 2000. Summit served and filed its Answer and Counterclaim in this Court on November 9, 2000. The two federal court cases were subsequently consolidated. Summit urges the Court to allow interest, beginning in December 1999, the date Summit first asserted its counterclaim, albeit in a state court action that was later voluntarily dismissed. The Court concludes that it is more logical and equitable to use the date when Summit first asserted and served the claims in the case at hand, *i.e.*, November 9, 2000. The Court will also use this date in its analysis as to whether or not SE made reasonable and timely settlement offers.

SE mentions the specific amounts of offers it made in March and July of 2001. Apparently SE made a combined offer of $480,000 in March 2001, and a joint offer with Baan for $500,000 plus waiver of a claim SE valued at $280,000 in July 2001. Later in July 2001, SE offered Summit $1,523,875.

SE owned a diminishing limits policy, that apparently originally provided coverage of $2

---

[1] Apparently SE originally sued Summit in state court but they voluntarily dismissed that case and refiled in this Court.

million. SE is not specific about the amount of two offers it made in 2002, because it did not disclose to the Court how much coverage remained, and was offered, from the policy limits. This makes it impossible to ascertain the reasonableness of these offers, although the Court is aware that the funds available for settlement purposes from the policy limits steadily diminished from their apparent value in July 2001 of $1,243,875. What is clear however is that, in addition to SE's offers of remaining limits and to waive its $280,000 claim, SE's February offers included an additional $250,000 in the Feburary 7, 2002 offer, and an additional $400,000 in the February 25, 2002 offer.

Summit argues that the only issue before the Court is whether SE made "timely and reasonable settlement offers." Summit argues that SE's first offer to settle, in March 2001, may have arguably been "timely", but that it was not "reasonable". Summit bases this argument on what it characterizes as extensive knowledge of SE about the claim against it, given the extensive discovery that had been produced to SE. Secondly, Summit argues that SE's ability to evaluate the merits and settlement value of the case should have been derived from SE's own knowledge in any event. Summit argues that, compared to the amount ultimately awarded by the jury, SE's settlement offers were unreasonable. Summit analogizes to the *Southard* case, where the verdict was 2½ times more than either of the first two settlement offers, which the court found to be unreasonable. *Southard v. Fox*, 113 N.M. 774, 778 (Ct. App. 1992). Summit focuses on this comparison type of argument and notes that the verdict in this case was nearly seven times the value of SE's first settlement offer and that SE's best settlement offer was a little less than half of the verdict.

The New Mexico Supreme Court utilized a similar type of comparison analysis in *Gonzales v. Surgidev Corp.*, 120 N.M. at 133. In that case, the defendant made pretrial settlement offers of $90,000 to each of two plaintiffs. In that case, the jury returned a verdict for the plaintiffs for

4

compensatory damages of $434,990.18 and $45,000 respectively, and awarded them each $350,000 in punitive damages. *Id*. at 138. Accordingly, the $180,000 settlement offer was approximately 15% of the ultimate verdict. Although the Supreme Court primarily reviewed the trial court's decision that Plaintiff's motion for prejudgment interest was untimely, the Supreme Court also noted that the $180,000 in settlement offers were not "unreasonable as a matter of law." *Id*. at 150.

In light of this guidance from the Supreme Court, I am unable to conclude that the offer that SE made to Summit in July 2001 was unreasonable. It was for $1,523,875, more than half of the amount ultimately awarded by the jury. It was made approximately eight months after Summit served and asserted its counterclaim in this action, which I conclude was timely. For these reasons, Summit's motion for prejudgment interest is not warranted under § 56-8-4(B), and must be denied.

## II. Analysis Under § 56-8-3

Section 56-8-3 allows prejudgment interest in cases on money due by contract, money received to the use of another and retained without the owner's consent, and money due on the settlement of matured accounts. The obligation to pay prejudgment interest under this section arises by operation of law and constitutes an obligation to pay damages to compensate a claimant for the lost opportunity to use money owed the claimant and retained by the obligor between the time the claimant's claim accrues and the time of judgment. *See Econ. Rentals, Inc. v. Garcia*, 112 N.M. 748, 762 (1991).

In this case, Summit's verdict of $3 million was based on a verdict that SE had breached the contract *and* committed unfair trade practices. The verdict is indivisible in terms of how much the jury awarded for each of these two claims. Even to the extent the verdict is based on a breach of

5

contract, however, I conclude that § 56-8-3 is inapplicable. It was Summit's claim that SE failed to perform services for Summit with reasonable skill and that it suffered damages as a consequence of the breach of the contract. As noted above, the parties agree that the amount awarded to Summit appears to be directly related to the amounts that Summit paid to SE for its work to implement the Baan software. Although these amounts were clearly paid pursuant to the contract between the parties, I conclude that this type of situation is *not* covered by this statute. It was not clear that SE had breached the contract, entitling Summit to a refund of monies paid, until the jury reached its verdict. Consequently, the refund to Summit does not qualify as money "due by contract", nor does it qualify as money "received to the use of another". *See* § 56-8-3.

Summit's arguments are misplaced. For example, it relies upon *Shaeffer v. Kelton*, 95 N.M. 182 (1980), where Defendant Kelton refused to pay Plaintiff Shaeffer, who had built a quadruplex pursuant to a contract between the parties. The trial court concluded that Defendant had breached the contract. The Supreme Court agreed and held that prejudgment interest should be awarded, but remanded for an adjustment to the amount of interest awarded by the trial court. That case is distinguishable for the same reason I mention above: it was based on a situation where a defendant committed a breach of contract to pay a definite sum of money, the monetary value of which is stated in the contract or is ascertainable by mathematical calculation. In other words, the defendant did not pay by the time required by the contract, which, the court concluded constituted a breach of contract. The interest was subsequently awarded from the time the money was payable until the date of judgment or the debt was otherwise discharged.

Conversely, in this case, Summit paid SE for services rendered, which the jury later found were not performed with reasonable skill, in accord with standard practices in the computer

6

consulting industry. The jury also determined that, to some extent, damages should be awarded for the breach of contract. Not until the jury decision, only a few days prior to entry of judgment, was it determined that monies paid to SE should be refunded. This refund is not technically due under the contract; it is due because the jury found that SE breached the contract. At that time, payment back to Summit was due. Any delay in the repayment of these monies will be covered by post-judgment interest.

For these reasons, Summit's motion for an award of prejudgment interest under § 56-8-3 is **denied**.

**WHEREFORE,** for the reasons stated herein, Summit Electric's Motion and Supporting Brief to Alter or Amend the Judgment to Award Prejudgment Interest (Docket No. 165) is **denied.**

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**